# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARK ANTHONY PALZER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CV-00564-GKF-JFJ |
| | ) | |
| COXCOM, LLC d/b/a COX | ) | |
| COMMUNICATIONS TULSA, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the court on the Motion for Summary Judgment [Doc. 114] of defendant CoxCom, LLC d/b/a Cox Communications Tulsa ("Cox").  For the reasons discussed below, the motion is granted.

## I.    Background/Procedural History

This is an employment discrimination case.  Plaintiff asserts claims for discrimination based on age and retaliatory discharge in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.; discrimination based on race and retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*; and breach of contract.[1]

Defendant filed the instant motion seeking summary judgment in its favor as to all of plaintiff's claims.  As more fully set forth in the court's Order on Cox's Motion to Strike Plaintiff's Response to Defendant's Motion for Summary Judgment, dated May 1, 2019, plaintiff failed to

---

[1] Plaintiff's Petition for Wrongful Termination and Discrimination in Employment also asserted claims under the Oklahoma Anti-Discrimination Act ("OADA"), 25 Okla. Stat. §§ 1101 *et seq*.  In its Opinion and Order dated July 3, 2018, this court dismissed plaintiff's OADA claims.  *See* [Doc. 102].

timely respond to Cox's motion.  *See* [Doc. 165, at pp. 1-6].  Further, although plaintiff filed a response to the motion on October 31, 2018, the response was deficient in that it did not attach all the referenced exhibits and the brief's footnotes were smaller than the twelve-point font required by Local Civil Rule 7.2(c).  [*Id.*].  Then, on November 9, 2018, plaintiff, without seeking leave of the court, filed two documents:  the first, titled "Errata/Correction to Pages 3, 14, 15 & 33 of Plaintiff Mark Palzer's Response to Defendant CoxCom LLC's Motion for Summary Judgment" and the second, "Exhibit Nos. 14, 75, 79, 80, 83, & 85 Supporting Plaintiff Mark Palzer's Response to Defendant CoxCom, LLC's Motion for Summary Judgment."  [Doc. 139 and Doc. 140].

Defendant filed a motion to strike plaintiff's response.  [Doc. 141].  Plaintiff did not timely respond to the motion to strike.[2]  Pursuant to its May 1, 2019 order, the court granted defendant's motion to strike and directed the Court Clerk to strike and publicly seal from view plaintiff's response to defendant's motion for summary judgment [Doc. 135], Errata/Correction [Doc. 139], and supplement attaching exhibit nos. 14, 7, 79, 80, 83, and 85 [Doc. 140].  *See* [Doc. 165]. However, in so doing, the court emphasized that its ruling was independent of its determination of defendant's motion for summary judgment.  [Doc. 165, p. 10].  Thus, based on the court's procedural orders, defendant's motion for summary judgment is now ripe for the court's review.

## II.    Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  Federal Rule of Civil Procedure 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a

---

[2] As more fully set forth in the court's May 1, 2019 order, plaintiff filed an untimely response on December 17, 2018, despite this court having previously denied plaintiff's second request for an extension of the deadline.  [Doc. 161].  The court struck plaintiff's untimely response.  [Doc. 162].

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A court must examine the factual record in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995). The inquiry for the court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

With respect to the determination of a motion for summary judgment when the nonmoving party fails to respond, the Tenth Circuit has stated as follows:

> a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56. Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002).

## III.  Undisputed Material Facts

The following facts are undisputed for summary judgment purposes.[3]  Plaintiff Mark Palzer, a Caucasian male, was born in May of 1962. In September 2005, Palzer began employment

---

[3] As previously stated, the court struck plaintiff's response to the defendant's motion for summary judgment and therefore the court accepts as true all material facts asserted and properly supported by defendant's motion for summary judgment. However, the court notes that, in the stricken response, plaintiff admitted for purposes of summary judgment defendant's undisputed material fact nos. 1-6, 8-15, 18-22, 27, 33-43, 45, 49-50, 53-54, 58, 60, 62-63, 65, 67-68, and 70-74. [Doc. 135, p. 9].  Further, the factual portion of the stricken response includes two parts:  a twenty-six

with Cox as an Account Services Representative, and, in March 2008, Palzer moved to an Outside

Sales Representative, or "Account Executive" position, on the Cox Business Inside Sales Team in

March of 2008.  The principal duty of a Cox Business Account Executive was to sell, re-sell, or

up-sell telephone data and/or video products to new or existing commercial business customers.

---

paragraph part entitled "Plaintiff's Response to Defendant's 'Undisputed Material Facts'" and an
eighty-eight paragraph part entitled "Plaintiff's Additional Material and/or Disputed Facts."  In the
"Plaintiff's Response to Defendant's 'Undisputed Material Facts'" part, plaintiff cites only his own
"additional" material facts to dispute defendant's fact nos. 16, 17, 25, 31, 47, 48, 52, 57, 59, 61,
64, 66, and 69].  The "additional facts," in turn, cite exhibits and portions of the record.  Pursuant
to Local Civil Rule 56.1(c):

> The response brief in opposition to a motion for summary judgment (or partial
> summary judgment) shall begin with a section which contains a concise statement
> of material facts to which the party asserts genuine issues of fact exist.  **Each fact
> in dispute shall be numbered, shall refer with particularity to those portions
> of the record upon which the opposing party relies and, if applicable, shall
> state the number of the movant's facts that is disputed.**  All material facts set
> forth in the statement of the material facts of the movant shall be deemed admitted
> for the purpose of summary judgment unless specifically controverted by the
> statement of material facts of the opposing party.

LCvR 56.1(c) (emphasis added).  The local rule is consistent with statements of the Tenth Circuit
interpreting FED. R. CIV. P. 56, and meant to further the purposes of Rule 56.  This court "is not
required to comb through Plaintiff[']s evidence to determine the bases for a claim that a factual
dispute exists."  *Bootenhoff v. Hormel Foods Corp.*, No. CIV-11-1368-D, 2014 WL 3810329, at
*2 n.3 (W.D. Okla. Aug. 1, 2014) (citing *Mitchell v. City of Moore, Okla.,* 218 F.3d 1190, 1199
(10th Cir. 2000)).  Plaintiff's practice of referring to only his own statements of additional
undisputed material facts requires the court to first find the referenced statements of undisputed
material fact in a separate section of the response, look to the exhibits referenced therein, and comb
through the record to find the relevant material.  This burdensome procedure does not satisfy the
particularity requirement of LCvR 56.1(c).  Because plaintiff failed to properly address
defendant's fact nos. 16, 17, 25, 31, 47, 48, 52, 57, 59, 61, 64, 66, and 69, and, had the court not
stricken the response brief entirely, the court would have considered those facts undisputed for
purposes of Cox's motion for summary judgment.  *See Espinoza v. Coca-Cola Enters., Inc.,* 167
F. App'x 743, 746 (10th Cir. 2006) ("[W]here the nonmovant failed to support his case with
adequate specificity, we will not fault the court for not searching the record on its own to make his
case for him (nor will we take on that role of advocacy).");  *see also Adler v. Wal-Mart Stores, Inc.,*
144 F.3d 664, 672 (10th Cir. 1998) (noting the "special importance" of the requirement that the
nonmovant specifically reference facts in its motion materials and the record in employment
discrimination cases).

Account Executives are subject to a Sale Compensation Plan, which provides that "[p]articipation in this plan is not a guarantee of employment for a specified period of time, and the company reserves the right to dismiss or discharge any participant at any time for any lawful reason."

Once an Account Executive completes his or her training, the executive's performance is generally measured against two benchmarks:  (1) sold quota attainment, referred to as "closed won," which is measured by the dollar amount of contracts signed by the then-potential Cox customer; and (2) installed quota attainment, referred to as "closed installed," which is measured by the actual dollar amount of services ultimately installed and billed to the customer.  [Doc. 114-4, pp. 2-3, ¶¶ 5-6].  Account executives are expected to meet one hundred percent (100%) of their monthly sales quotas, but their performance is regularly evaluated using a rolling three-month average, which is expected to be maintained at a minimum of eighty percent (80%) to quota attainment.  On May 25, 2010, Palzer's then-manager issued Palzer a documented verbal warning and thirty (30) day performance improvement plan ("PIP") because his installed attainment to quota over the prior four months was fifty-one percent (51%).

Cox's then-Business Sales Director Tim Jenney, a Caucasian born in 1974 who was then 37 years old, hired Shelley Stauffer as the new Small-Medium Business Team Manager effective February 4, 2012.  Stauffer is a Caucasian female born in 1960, and was 51 years old at the time of her hire.  Existing members of the Small-Medium Business Team on the date of Stauffer's hire were Palzer, who was then 49 years old; Larry Scroggins, a Caucasian male born in 1967 who was then 44 years old; Edward (Hunter) Harris, a Caucasian male born in 1983, who was then 28 years old; and Chuck Watson, a Caucasian male born in 1982, who was then 29 years old.

In 2011, each of the Account Executives on the Small-Medium Business Team had monthly sales quota of $1,700.  In 2012, the monthly sales quota was increased to $1,800.  Palzer

failed to meet his monthly sales quota in December 2011, as well as January and February of 2012, leaving his three-month average sold quota attainment below 80%.[4]   [Doc. 114-4, p. 3, ¶ 10; Doc. 114-2, pp. 10-11].   During that same period, Harris and Scroggins had three-month averages of 52% and 39%, respectively.   On March 9, 2012, Stauffer placed both Palzer and Scroggins on a ninety (90) day PIP to run through May 2012, and placed Harris on a thirty (30) day PIP through the end of March 2012.   Watson had a rolling three-month average from December 2011 to February 2012 of 110% sold quota attainment, and was not placed on a PIP.

In February 2012, at Jenney's direction, Stauffer began developing a module sales territory strategy for the Small-Medium Business Sales team.   Pursuant to the strategy, Account Executives on the team would prospect for and cultivate customers in assigned zip codes.   Prior to implementation of the module sales territory strategy, Account Executives could sell in any zip code within the Tulsa marketplace.   On February 29, 2012, Stauffer informed her team of the transition to the new module strategy, and requested that the Account Executives provide any specific zip code preferences for her to consider when making the module zip code assignments. In their preferences, both Palzer and Watson identified the 74012 zip code.

The final module and zip code assignment plan consisted of seven individual modules, five of which were assigned to specific team members:   Harris, Scroggins, Watson, Palzer, and Stacy Crawford, an African-American female, born in 1974 who was then 37 years old.   Stauffer hired

---

[4] In the stricken response, Palzer disputes his monthly sold quota attainment in December of 2011. [Doc. 135, p. 9, ¶ 16].   Palzer points to a January 8, 2013 letter from Stauffer to Palzer wherein his sales quota for December 2011 is stated as being 57%.   *See* [Doc. 135-32, p. 1].   However, both Cox and Palzer offer evidence that his sales quota attainment in January 2012 was 35% and in February 2012 it was 47%.   *See* [Doc. 114-2, pp. 10-11 and Doc. 140-5, p. 8].   Therefore, regardless of whether his sold quota attainment was 31% or 57% in December 2011, Palzer failed to meet his monthly sold quota in December 2011, and his three-month average sold quota attainment was also below 80%.

Crawford for a newly authorized Account Executive position effective March 26, 2012. Each of the seven modules had a projected annual value of at least $4,000,000.00. [Doc. 114-4, pp. 5-6, ¶ 17; p. 48]. Stauffer assigned the 74012 zip code to Watson. Jenney reviewed and approved the final proposed modules and zip codes for each account executive.

On March 5, 2012, Stauffer sent an email to her team announcing the assigned modules and zip codes. In the email, Stauffer asserted that she used the following methodology to assign the zip codes: "[r]equests first"; "[o]rder in which [she had] received the requests"; "[t]ie breakers based on performance"; and "[e]quality among all team members – balancing total weighted value with the number of zip codes assigned." [Doc. 114-4, p. 51]. The sales module territory strategy was scheduled to take effect on May 15, 2012, but ultimately did not take effect until May 31, 2015. Until the effective date of the sales module territory strategy, Account Executives could continue to sell in any zip code, but were supposed to be developing their assigned zip codes.

Palzer exceeded his monthly quota attainment during March and April of 2012, and sold 87% to quota attainment during May 2012, completing his PIP with a rolling three-month average of 117%. Scroggins also completed his PIP with a rolling three-month average of 85% to sold quota attainment. However, Harris sold only 64.6% to quota attainment during April 2012, 22.5% to quota attainment during May 2012, and 11.7% to quota attainment in June 2012, and was discharged.

Effective May 26, 2012, Stauffer hired Brian Campbell, a then-26 year old African American male who was born in 1986, for a newly authorized Account Executive position. Additionally, effective May 29, 2012, Stauffer hired Jakobe Young, a then-36 year old African American male born in 1976, for another newly authorized Account Executive position. Effective August 20, 2012, Stauffer hired Jeannette Barr, a then 43 year old Caucasian female born in 1969,

to fill Harris's former position. The account executives hired in 2012 also had a sold and installed quota attainment of $1,800 per month but were subject to a "ramp" period as follows: 0% to quota during the first full month of their hire while in training; 25% during the second month of their employment; 50% during the third month; 75% during the fourth month; and 100% during the fifth month of their employment.

In the three months following implementation of the sales module strategy, Palzer sold 72% to quota attainment in June 2012; 100% to quota attainment in July 2012; and 71% to quota attainment in August 2012, for a rolling three-month average of 81% to sold quota attainment.[5] [Doc. 114-2, pp. 10-11]. During that same period, Scroggins achieved a rolling three-month average of 100% sold to quota attainment and Watson obtained a rolling three-month average of 113% sold to quota attainment. On August 9, 2012, Watson left the Small-Medium Sales Team for an Account Executive position with Cox Business's Mid-Market Sales Team. [Doc. 114-2, p.

---

[5] In the stricken response, plaintiff does not dispute his sold quota attainment in June or July 2012, but contends that his sold quota attainment in August 2012 was 102%. [Doc. 135, pp. 32-33, ¶ 76]. As in initial matter, the court notes that, to dispute defendant's material fact no. 52, plaintiff improperly refers only to his own statement of additional material facts and therefore, had the court considered plaintiff's response brief, the court would have deemed defendant's undisputed material fact no. 52 undisputed. *See supra* n.3. Further, in plaintiff's additional fact purporting to dispute his August 2012 sales quota attainment, plaintiff points to undated correspondence related to the Rusty Crane account wherein plaintiff concedes that the account was not within one of his assigned zip codes [Doc. 135-18]; twenty-seven pages of account notes with no explanation beyond handwritten notes suggesting that other team members sold in Palzer's zip code in May and July 2012 (rather than August) without permission [Doc. 135-19, pp. 3, 15-16, and 25-27]; a January 8, 2013 PIP extension from Stauffer to Palzer reflecting a sold quota attainment in August of 71% [Doc. 135-32]; and his own affidavit averring "my sales in August 2012 were $1,841, $568 more than Cox is claiming." [Doc. 140-2, p. 11, ¶ 30]. Plaintiff offered no evidence relative to his own permission to sell outside of his zip code or that other team members lacked permission to sell inside his zip code. Further, plaintiff offers no evidence beyond his own conclusory statements that all accounts attributable to him were not included in his August 2012 sold quota attainment. Absent evidence that the referenced accounts were properly attributable to Palzer, his self-serving affidavit is insufficient to create a genuine dispute of fact regarding plaintiff's August 2012 sold quota attainment.

4, ¶ 11; Doc. 114-4, pp. 9-10, ¶ 42].  On August 18, 2012, Stauffer hired Andrew Finnefrock, a then-29 year old Caucasian male.  [Doc. 114-2, p. 5, ¶ 16].

Palzer sold 49% to quota attainment in September 2012 and 22% to quota attainment in October 2012, thereby placing his three-month rolling quota attainment average below 80%.[6] [Doc. 114-2, pp. 10-11].  On October 24, 2012, Stauffer placed Palzer on a sixty-day PIP to run through December 2012.  The PIP noted that Palzer "ha[d] only made quota 4 of 9 months."  [Doc. 114-1, p. 225].  Palzer's November sold to quota attainment was 106%, and his sold to quota attainment for December was 90%.  [Doc. 114-2, p. 11].

On or about December 21, 2012, Palzer, while represented by his then-legal counsel Jeff Nix, submitted an intake questionnaire to the Equal Employment Opportunity Commission ("EEOC") for the period from February 2, 2012 to December 20, 2012, alleging that he was being discriminated against because of his age, race, and sex.  The intake questionnaire was assigned EEOC charge number 564-2013-0034, and, on December 27, 2012, the EEOC sent Cox a Notice

---

[6] In the stricken response, plaintiff contends his October sold to quota attainment was 75%.  *See* [Doc. 135, pp. 32-33, ¶ 76].  Again, the court notes that, to dispute defendant's material fact no. 57, plaintiff improperly refers only to his own statement of additional material facts and therefore, had the court considered the response brief, the court would have deemed defendant's material fact no. 57 as undisputed.  Further, in his additional material fact purporting to dispute his October 2012 sold quota attainment, plaintiff cites his own affidavit, wherein he avers that his October 2012 sales did not include sales totaling $962 from the following accounts:  Vincent Anthony Jewelers, Little Caesers Pizza, and Oasis Network.  However, plaintiff offers no evidence beyond his own affidavit that the accounts were not included.  Nor does plaintiff offer evidence of the sales value for the Little Caesers Pizza or Oasis Network accounts.  Thus, the evidence offered by plaintiff does not create a genuine dispute of material fact as to his October 2012 sold to quota attainment.  Palzer also cites a January 8, 2013 PIP extension, which also states that plaintiff's October 2012 sold to quota attainment was 22%, and therefore the January 8, 2013 PIP extension does not create a genuine dispute of material fact.  Moreover, even if Palzer's October sold to quota attainment was 75%, as claimed by plaintiff, his three-month rolling sold to quota average still falls below 80%.  This is true even if it is assumed that plaintiff obtained a 102% sold to quota average in August of 2012 as asserted by plaintiff.  *See* [Doc. 135, pp. 33 (2012 3-Month Rolling Average for October)].

of Charge of Discrimination informing Cox as follows: "The Commission has received an unperfected charge. The Commission is working to perfect the writing of this charge. Upon completion, as regulations allow, we will mail you a copy of the charge." On January 29, 2013, however, the EEOC informed Cox "that the charge cited above has been withdrawn due to Charging Party's failure to respond to communications from the Commission," and that the EEOC was "terminat[ing] any further processing of this matter."

In 2013, each of the Account Executives on the Small-Medium Business Team, including Palzer, had monthly sales quotas of $1,900. On January 8, 2013, Stauffer placed Palzer on a 30-day PIP extension. The January 8, 2013 PIP extension requests that Palzer note:

- In the past three months your cumulative installed quota attainment is 27%.
- In the past three months your cumulative sold quota attainment is 66%.

[Doc. 114-1, p. 227]. Palzer completed his PIP in January 2013, selling $2,451 and thereby exceeding his monthly sold attainment quota of $1,900. However, over the next four months, Palzer sold 42% to quota in February 2013, 29% to quota in March 2013, 47% to quota in April 2013, and 46% to quota in May 2013. On June 6, 2013, Melissa Cruts, Cox Human Resources Manager for the Tulsa, Oklahoma City, and Northwest Arkansas markets, sent an email and Termination Review Form regarding Palzer to Randy Chandler, Vice President of Cox Business; Keith Means, Manager of the Cox Business Large Sales team; and Heather Romeike, Oklahoma Human Resources Director. Chandler is a Caucasian male, born in 1956, who was then 56 years old. [Doc. 114-2, p. 3, ¶ 5]. Means is a Caucasian male, born in 1958, and was then 55 years old. [Id. ¶ 5]. Romeike is a Caucasian female born in 1972, who was then 41 years old. [Id. ¶ 20]. The Termination Review Form stated as follows:

> [Plaintiff] has continually failed to meet his sales quota. During the last 29 months, [plaintiff] has only made his quota 11 months (38%). He has been on multiple Performance Improvement Plans within the last year. The expectation was

communicated verbally and in the PIP's that [plaintiff] must make and sustain improved performance.  However, [plaintiff] fails to sustain any improvement in his performance.

[Doc. 114-2, p. 26].  Palzer's termination was approved by Means, Chandler, Romeike, and Becky Ordoyne, Romeike's Director, a then 53 year old Caucasian female.  Palzer was discharged on June 10, 2013.

On March 14, 2014, Palzer filed a second EEOC Intake Questionnaire, which was assigned EEOC charge number 564-2014-00643, alleging that he was discriminated against because of his age, race, and sex, and in retaliation for alleged protected activity under the ADEA and Title VII.  On June 13, 2014, Palzer filed a perfected EEOC charge number 564-2014-00643, purporting to cover the period from February 2, 2012 to June 10, 2013.  On October 22, 2014, the EEOC dismissed charge number 564-2014-00643 and issued plaintiff a notice of right to sue on that charge number, pursuant to which Palzer brought this action in state court on January 20, 2015.[7]  Cox was not served until September 14, 2015 [Doc. 2-2], and this action was removed on October 2, 2015.

## IV.    Analysis

Defendant seeks summary judgment based on five separate "propositions":  (1) plaintiff's ADEA and Title VII claims are time barred to the extent they accrued on or before May 18, 2013; (2) Cox is entitled to summary judgment as to plaintiff's age discrimination claim under the ADEA; (3) Cox is entitled to summary judgment as to plaintiff's race discrimination claim under Title VII; (4) Cox is entitled to summary judgment on plaintiff's ADEA and Title VII retaliatory discharge claims; and (5) Cox is entitled to summary judgment on plaintiff's breach of contract

---

[7] Although charge no. 564-2014-00643 asserted discrimination based on sex, the Petition does not include a claim for sex discrimination.  *See* [Doc. 2-1].

claim.   The court must consider whether defendant, in the motion for summary judgment, demonstrates that no genuine issue of material fact exists as to each proposition and therefore that it is entitled to judgment as a matter of law.[8]  *See Reed*, 312 F.3d at 1195

A.      *ADEA and Title VII Claims Accrued On or Before May 18, 2013*

Title VII imposes a charge filing requirement for allegedly unlawful employment practices, pursuant to which:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved *within three hundred days after the alleged unlawful employment practice occurred*.

*Lincoln v. BNSF Ry. Co.,* 900 F.3d 1166, 1181 (10th Cir. 2018) (emphasis in original) (quoting 42 U.S.C. § 2000e-5(e)(1)).[9]  "A plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue-letter."  *Id.* (quoting *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 (10th Cir. 2004)); *see also Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019) ("As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal

---

[8] It should be noted that, in the stricken response, plaintiff did not respond to defendant's proposition one (as to ADEA and Title VII claims accrued prior to May 18, 2103), proposition four (ADEA and Title VII retaliatory discharge claims), and proposition five (breach of contract). Rather, plaintiff argues only that defendant is not entitled to summary judgment on plaintiff's claims for "discriminatory discharge" under Title VII and the ADEA.  [Doc. 135, p. 37].  Thus, plaintiff abandoned the remaining claims and defendant would be entitled to summary judgment on those claims on that basis alone had the response not been stricken.  *Hinsdale v. City of Liberal*, 19 F. App'x 749, 769 (10th Cir. 2001).

[9] Oklahoma is a deferral state and therefore a claimant has three hundred days from the date of the unlawful conduct to file a charge.  *Riley v. Tulsa Cty. Juvenile Bureau ex rel. Tulsa Cty. Bd. of Comm'rs*, 421 F. App'x 781, 783 (10th Cir. 2010).

Employment Opportunity Commission (EEOC or Commission).").  "A claim is time barred if it is not filed within the[] time limit[]."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002).  The ADEA includes "virtually identical" charge filing requirements and therefore the court construes the ADEA and Title VII filing requirements consistently.  *Shikles v. Sprint/United Mgmt. Co.,* 426 F.3d 1304, 1309 (10th Cir. 2005) (quoting *Foster*, 365 F.3d at 1194)), *abrogated on other grounds by Lincoln*, 900 F.3d at 1185; *see also Riley*, 421 F. App'x at 783 ("Before a plaintiff may file suit under Title VII or the ADEA, he must exhaust his administrative remedies by filing a charge with the EEOC.").

Further, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Morgan*, 536 U.S. at 113.  Because each discrete discriminatory act starts a "new clock," a separate charge must be filed within the applicable time period.  *Id.*[10]  *See also Martinez v. Potter,* 347 F.3d 1208, 1210 (10th Cir. 2003) ("*Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted.").

The Tenth Circuit has recognized that when a Title VII or ADEA complainant "refuses or fails to provide the agency information sufficient to evaluate the merits of the claim, he or she 'cannot be deemed to have exhausted administrative remedies.'"  *Khader v. Aspin*, 1 F.3d 968, 971 (10th Cir. 1993) (quoting *Wade v. Sec'y of Army*, 796 F.2d 1369, 1377 (11th Cir. 1986)), *abrogated on other grounds, Lincoln,* 900 F.3d 1166; *see also Shikles*, 426 F.3d at 1311 ("[A] private sector

---

[10] This principle is inapplicable to hostile work environment claims.  *Morgan*, 536 U.S. at 115. However, plaintiff does not assert a hostile work environment claim.

employee must cooperate with the EEOC in order for the employee to exhaust his or her administrative remedies under the ADEA."). The same is true if the complainant abandons the claim prior to a final agency determination. *Khader,* 1 F.3d at 971.

On December 21, 2012, plaintiff, through his then-counsel, submitted an intake questionnaire to the EEOC for the period from February 2, 2012 through December 20, 2012, asserting discrimination based on age, race, and sex. The intake questionnaire was assigned charge no. 564-2013-0034. However, defendant presents undisputed evidence that, on January 29, 2013, the EEOC informed it that charge no. 564-2013-0034 had been withdrawn due to plaintiff's failure to respond to communications from the EEOC, and that the EEOC was terminating the processing of the charge. The Tenth Circuit has held that complainant's failure to respond to EEOC requests for information amounts to a failure to exhaust. *See, e.g., Cirocco v. McMahon*, 768 F. App'x 854, 860 (10th Cir. 2019).[11] Thus, defendant's material facts, supported by undisputed evidence, demonstrates that plaintiff failed to cooperate with the EEOC relative to charge no. 564-2013-0034. Charge no. 564-2013-0034 therefore did not effectively exhaust plaintiff's administrative remedies with respect to alleged discriminatory or retaliatory acts that occurred during the period from February 2, 2012 through December 20, 2012.

The court next considers the extent to which plaintiff's second EEOC intake questionnaire and the related charge, designated EEOC charge no. 564-2014-00643, effectively exhausted plaintiff's administrative remedies. As previously stated, in a deferral state such as Oklahoma, a complainant must exhaust his administrative remedies by filing a charge within 300 days of the

---

[11] "Unpublished decisions are not precedential, but may be cited for their persuasive value." 10th Cir. R. 32.1(A).

- 14 -

alleged discriminatory act.  *See Riley*, 421 F. App'x at 783.  Each discrete discriminatory act requires a separate charge within the applicable time period.  *Morgan*, 546 U.S. at 113.  Defendant presents undisputed evidence that plaintiff filed the EEOC intake questionnaire with respect to charge no. 564-2014-00643 on March 14, 2014.  Because each discrete discriminatory act constitutes "its own unlawful employment practice" requiring its own timely charge, charge no. 564-2014-00643 effectively exhausts administrative remedies only for those alleged discriminatory acts that occurred during the 300 day period prior to the filing of the charge. Defendant is entitled to judgment as a matter of law on plaintiff's claims to the extent based on discrete acts of alleged discrimination or retaliation that occurred on or before May 18, 2013.[12]

### B.    Age Discrimination under the ADEA

Defendant next asserts that it is entitled to summary judgment as to plaintiff's claim for ADEA age discrimination because plaintiff cannot establish a *prima facie* case and, further, that defendant has set forth a legitimate, non-discriminatory reason for plaintiff's discharge that plaintiff cannot demonstrate was pretextual.

The ADEA provides relief for acts of intentional discrimination based on age in employment.  *See* 29 U.S.C. § 623; *Bennett v. Windstream Commc'ns, Inc.,* 792 F.3d 1261, 1266 (10th Cir. 2015).  "A plaintiff can prove intentional discrimination through either direct evidence or circumstantial evidence that creates an inference of intentional discrimination."  *Bennett*, 792 F.3d at 1266 (citing *Riser v. QEP Energy*, 776 F.3d 1191, 1199 (10th Cir. 2015)).  Where a plaintiff

---

[12] Cox does not argue that the exhaustion period should be measured from June 13, 2014—the date on which charge. no. 564-2014-00643 was perfected—rather than March 14, 2014—the date Palzer submitted the EEOC intake questionnaire.  *See* [Doc. 114, pp. 28-29].  Thus, the court presumes that March 14, 2014 is the applicable date from which the exhaustion period must be measured.

relies on circumstantial evidence of intentional discrimination, the three-step burden shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), applies.[13]  *Id.*  Pursuant to the *McDonnell Douglas* burden-shifting framework, a plaintiff must first establish a *prima facie* case of age discrimination.  If the burden is met, the burden of production shifts to the defendant to articulate "a legitimate, non-discriminatory reason" for its action.  Presuming the defendant produces a legitimate, non-discriminatory reason, the burden of production shifts to the plaintiff to "show that the defendant's explanation was merely pretextual." *Id.*

Defendant asserts that, to state a *prima facie* case of age discrimination, plaintiff must establish  he was "(1) 40 years or older, (2) performing satisfactory work, (3) suffered an adverse employment action, and (4) replaced by a substantially younger person." [Doc. 114, p. 30 (citing *Thornton v. APAC, Inc.*, No. 10-CV-095-GKF-PJC, 2012 WL 39381, at *4 (N.D. Okla. Jan. 9, 2012))].  Defendant contends that plaintiff cannot satisfy the second or fourth elements.  The court first considers the fourth element.

Defendant claims that plaintiff was not replaced by a younger person, and points to evidence that Stauffer did not hire anyone after plaintiff's discharge.  However, the fact that Stauffer did not hire anyone else does not establish that Palzer was not replaced by a younger person and therefore defendant fails to meet its burden to demonstrate that no genuine issue of material fact exists as to the fourth element.[14]

---

[13] Both defendant's motion for summary judgment and plaintiff's stricken brief in opposition apply the *McDonnell Douglas* burden-shifting framework, applicable when a plaintiff relies on circumstantial evidence of intentional discrimination.  *See* [Doc. 114 and Doc. 135].

[14] Someone other than Stauffer may have hired a younger person, or plaintiff's module may have been reassigned to a younger person.

With respect to the second element, defendant points to evidence that plaintiff was not performing satisfactorily. *See* [Doc. 114, p. 30]. The Tenth Circuit has expressed a preference for "more concise formulations" of the *prima facie* elements of an age discrimination claim, that do not require plaintiff to establish satisfactory performance. *Bennett,* 792 F.3d at 1266 n.1; *see also id.* ("A prima facie case generally requires a plaintiff to show, by a preponderance of the evidence, that she is a member of a protected class, she suffered an adverse employment action, and the challenged action occurred under circumstances giving rise to an inference of discrimination."). In an unpublished decision, a Tenth Circuit panel reasoned "[a] defendant's evidence regarding an employee's work performance should not be considered when determining whether the employee has made a prima facie case of employment discrimination . . .  Instead, such evidence is appropriately considered during the next phase of *McDonnell Douglas'* three part analysis." *Ellison v. Sandia Nat'l Labs.*, 60 F. App'x 203, 205 (10th Cir. 2003) (internal citations omitted). Accordingly, at least one court in this district has concluded that it is unnecessary for a plaintiff to show "satisfactory work" as part of a *prima facie* case in a discriminatory termination case. *See Gibson v. Mabrey Bank*, No. 14-CV-0770-CVE-FHM, 2015 WL 5098698, at *6 (N.D. Okla. Aug. 31, 2015). *But see Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1144 (10th Cir. 2008) (agreeing with the general proposition that "under appropriate circumstances" pretext evidence may be useful to determine if plaintiff established a *prima facie* Title VII case).

The court need not decide the propriety of considering evidence of plaintiff's job performance to establish a *prima facie* claim in this case because, as discussed below, defendant provides undisputed evidence of a "legitimate, non-discriminatory" reason for terminating plaintiff that plaintiff fails to show is pretextual.  Therefore, defendant is entitled to summary judgment in its favor.

Defendant presents evidence of plaintiff's continued failure to meet his sales quota or to sustain performance improvement. *See* [Doc. 114-2, pp. 10-13, 23-25; Doc. 114-4, p. 11, ¶ 51]. Specifically, defendant offers evidence that, in 2012, Palzer failed to attain his sales quota in January, February, May, July, August, September, October, and December. [Doc. 114-2, pp. 10-13]. Additionally, in 2013, Palzer did not satisfy his sales quota in February, March, April, or May. Thus, over the course of his most recent seventeen months of employment, Palzer satisfied his quota only five times.[15] It is further undisputed that Palzer's three-month rolling average was below 80% in the three months immediately prior to his discharge.[16] [Doc. 114-2, pp. 10-11]. Finally, on October 24, 2012, Stauffer placed Palzer on a sixty-day PIP to run through December 2012, which, on January 8, 2013, was extended by thirty days. The thirty-day PIP extension specifically noted Palzer's three month cumulative installed quota and sold quota. [Doc. 114-1, p. 227]. Accordingly, defendant satisfied its burden of production to demonstrate a legitimate, non-discriminatory reason for plaintiff's termination.

Pursuant to the *McDonnell Douglas* framework, the burden would generally shift to plaintiff to produce evidence that defendant's explanation was pretextual. To defeat summary judgment, plaintiff "had to show 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [explanation] . . . that a reasonable factfinder could rationally find [it] unworthy of credence and hence infer that [Cox] did not act for the asserted non-discriminatory reasons.'" *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) (quoting *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008)). In the context

---

[15] Even taking plaintiff's assertions in the stricken response as to his sales performance as true, plaintiff satisfied his sales quota only six times. *See* [Doc. 135, pp. 32-33, ¶ 76].

[16] Significantly, plaintiff did not purport to dispute his 2013 sales numbers in the stricken response.

of an ADEA claim, "it is not the employer's burden to negate any possible contributory role played by age in the challenged adverse action but, conversely, the employee's burden to show that age was the 'but for' cause of the action." *Id.* at 1193 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009)). For the reasons discussed above, plaintiff's response has been stricken. Thus, plaintiff fails to satisfy his burden of production to demonstrate that defendant's asserted reason for terminating plaintiff is pretextual.

Even if the court were to consider plaintiff's stricken response, plaintiff fails to provide evidence to create a genuine dispute of material fact as to pretext. Generally, a plaintiff may demonstrate pretext in three ways: "(1) with evidence that defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action taken by the defendant under the circumstances; or (3) with evidence that . . . he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000)). But, as discussed below, plaintiff fails to show that a genuine issue of fact exists as to any of these three ways of demonstrating pretext.

*First,* plaintiff's stricken response fails to create a genuine dispute of material fact as to the falsity of defendant's stated reason for plaintiff's discharge. Although plaintiff contends that Cox decisionmakers "misrepresented and/or willfully exaggerated" his low sales numbers, as discussed above, even taking plaintiff's assertions that defendant underreported his sales in 2012 and 2013 as true, plaintiff nevertheless failed to satisfy his quota in eleven of seventeen months. Further, to determine whether a stated reason for discharge was pretextual, the court must "look at the facts as they appear to the person making the decision to terminate." *Simmons v. Sykes Enters., Inc.*,

647 F.3d 943, 948 (10th Cir. 2011) (quoting *Kendrick*, 220 F.3d at 1231).   Evidence that the employer was mistaken in its reason for termination is insufficient to create a genuine dispute as to the credibility of defendant's asserted reason.   *Id.*   Accordingly, even if Palzer's sales figures were under reported, Cox's mistake—absent evidence of bad faith by those making the termination decision—is insufficient to create genuine question of fact.

*Second,* although plaintiff argues that defendant acted contrary to its written company policy by failing to place Palzer on a PIP immediately prior to his termination, the Cox Corrective Action policy specifically provides that the corrective action policy may not be followed "[w]hen management is of the opinion that remedial efforts are unlikely to be successful."  [Doc. 114-2, p. 34]; *see also* [Doc. 114-2, p. 36 ("In all cases, progressive discipline must follow the above outline unless the severity of the action warrants a different step.  Because unsatisfactory job performance and unacceptable conduct have different levels of seriousness, corrective action may occur at any level of the corrective action process.")].   Further, plaintiff criticizes defendant's reliance on his monthly sales quota (rather than his three month rolling average) as violating Cox's internal company policies, but plaintiff's position is contrary to the undisputed evidence, including the evidence cited by plaintiff.  *See, e.g.,* [Doc. 114, p. 11, ¶ 9 ("Account Executives are expected to meet 100% of their monthly sales quotas . . . ."); Doc. 114-4, p. 3, ¶ 7; Doc. 135-35, p. 82:19 to 83:3].[17]  Plaintiff's stricken response does not create a genuine dispute of material fact as to pretext based on asserted violations of defendant's policies.[18]

---

[17] The court notes that plaintiff submitted a rough draft of the deposition transcript of Melissa Cruts in the stricken response brief, rather than the official transcript.  *See* [Doc. 135-35].

[18] To the extent Palzer relies on evidence of his prior good performance evaluations and sales as evidence of the falsity of defendant's stated reason for his termination or that Cox acted contrary to its own internal policies, as recognized by the Tenth Circuit, "prior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual.  To hold otherwise would be

*Third*, plaintiff fails to offer evidence that he was treated differently than similarly situated employees for comparable performance deficiencies. As explained by the Tenth Circuit,

> [a]n employee is similarly situated to the plaintiff if the employee deals with the same supervisor and is subject to the "same standards governing performance evaluation and discipline." A court should also compare the relevant employment circumstances, such as work history and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated.

*Kendrick*, 220 F.3d at 1232 (internal citation omitted) (quoting *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)). "[I]t falls on the employee alleging discrimination to rule out alternative explanations for the differential treatment." *Roberts,* 733 F.3d at 1310 (citing *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120-21 (10th Cir 2007)).

In the stricken response, plaintiff contends that he received less favorable treatment than 27-year-old Campbell, 39-year-old Crawford, 31-year-old Finnefrock, 36-year old Young, and 30-year-old Harris, all of whom also failed to retain a three-month rolling sold to quota average over 80% in 2012. However, defendant presents undisputed evidence that Harris was terminated for failing to make quota on May 12, 2012. *See* [Doc. 114-4, p. 7, ¶ 24]. Likewise, evidence submitted by plaintiff indicates that Young was terminated subsequent to plaintiff, on September 12, 2013, for failure to meet performance goals. [ Doc. 135-1, p. 14 and 20].

Additionally, based on the summary judgment record, the court concludes that Campbell, Crawford, Finnefrock, and Young were not similarly situated to plaintiff and therefore evidence that the four received more favorable treatment is insufficient to create a genuine dispute of material fact as to pretext. It is undisputed that Palzer began employment with Cox in 2005 and

---

to hold that things never change, a proposition clearly without basis in reality." *Roberts v. Int'l Bus. Machs. Corp.*, 733 F.3d 1306, 1309 (10th Cir. 2013) (quoting *Billet v. CIGNA Corp.*, 940 F.2d 812, 826 (3d Cir. 1991)).

moved to the Account Executive position on the Cox Business Inside Sales Team in March of 2008.  Plaintiff was subject to the monthly sales quota of $1,700 in 2011, $1,800 in 2012, and $1,900 in 2013, for the entirety of the respective years.  Cox placed plaintiff on a 30-day PIP on May 25, 2010; a 90-day PIP on March 9, 2012; and a sixty-day PIP on October 24, 2012, which was extended by 30 days on January 8, 2013.

In contrast, the employees not members of the age-protected class did not begin employment with Cox until 2012:  Campbell on May 26, 2012; Crawford on March 26, 2012; Finnefrock on August 18, 2012; and Young on May 29, 2012.  These employees were subject to a "ramp period" for the first four months of their employment, and therefore were not required to achieve the $1,800 monthly sales quota during the respective "ramp period."  Thus, the non-protected employees do not have similar work histories to plaintiff, and were not subject to the same sales quota attainment requirement as plaintiff in 2012.  Accordingly, evidence with respect to the employees cited by plaintiff is not probative of pretext and plaintiff fails to create a genuine dispute of material fact.

The court also notes that Stauffer, who made the recommendation to discharge plaintiff, was 51 and therefore was also a member of the protected class at the time of the employment decision.  Additionally, Means, Chandler, Romeike, and Ordoyne, all of whom approved Palzer's termination, were over 40 and members of the same protected class.  The fact that critical employees in the discharge decision were members of the same protected class belies any suggestion of pretext.  *Estate of Bassatt v. Sch. Dist. No. 1 in the City & Cty. of Denver*, 775 F.3d 1233, 1241 (10th Cir. 2014) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)).

Finally, plaintiff's reliance on certain age-based comments does not create a genuine dispute as to discriminatory animus or pretext. In the stricken response, plaintiff submits evidence that, during a team meeting on June 13, 2012, Stauffer ridiculed plaintiff for his age and, days later, demanded to know his age. [Doc. 140-2, p. 8, ¶¶ 18-19]. Additionally, plaintiff presents anecdotal evidence that, in June 2012, a co-worker overhead Stauffer stating that Stauffer believed Cox employed "too many old, white men." [Doc. 140, pp. 1-2]. However, these comments allegedly occurred in June of 2012—a year prior to plaintiff's discharge. Likewise, an incident in which Stauffer ordered plaintiff off of a bus occurred in June 2012. [Doc. 140-2, ¶ 16]. The court can discern no causal nexus between incidents that occurred in June 2012 and plaintiff's discharge a year later. *See Bolton v. Scrivner, Inc.*, 36 F.3d 939, 944 (10th Cir. 1994) (requiring nexus between comments and adverse employment decision).

The court is mindful that it is not the court's role to "act as a 'super personnel department' that second guesses employers' business judgments." *Simmons*, 647 F.3d at 948 (quoting *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir. 1999)). It is possible that there were aspects of defendant's adoption of the zip-code module and subsequent sales quota attainment requirements that were unfair. However, plaintiff provides no evidence from which a finder of fact might reasonably infer that any unfairness amounts to intentional discrimination against plaintiff based on his age. Defendant is entitled to summary judgment as to plaintiff's age discrimination claim under the ADEA.

C.     *Race Discrimination under Title VII*

Defendant is also entitled to summary judgment as to plaintiff's race discrimination claim under Title VII. The *McDonnell Douglas* framework applies to claims for discriminatory termination on the basis of race under Title VII. *Plotke v. White,* 405 F.3d 1092, 1099 (10th Cir.

2005). As discussed above, defendant satisfied its burden to produce evidence of a "legitimate, non-discriminatory reason" for plaintiff's discharge. However, plaintiff fails to satisfy his burden of production to demonstrate that defendant's asserted reason for the termination is pretextual. As previously discussed, plaintiff's response has been stricken and nothing in the evidence submitted by defendant suggests pretext.

Even considering plaintiff's stricken response, no dispute of material fact exists. As discussed above, plaintiff fails to present evidence to demonstrate a genuine dispute of material fact as to whether defendant's stated reason for the discharge was false or that defendant acted contrary to its written policy. Nor does plaintiff's stricken response create a genuine dispute of material fact as to whether he was treated differently than similarly situated employees. As previously stated, Young, Campbell, and Crawford were not similarly situated, as they did not have similar work histories to plaintiff and were not subject to the same sales quota attainment requirement as plaintiff throughout 2012. *See Kendrick*, 220 F.3d at 1232. Moreover, plaintiff submits evidence with his response that Cox placed Young (an African-American male) on PIPs on March 8, 2013 and July 24, 2013 for failure to meet performance goals, culminating in his termination on September 12, 2013. [Doc. 135-1, pp. 14 and 20]. Similarly, Crawford (an African-American female) was placed on PIPs on February 1, 2013; June 24, 2013; and September 3, 2013 for failure to satisfy performance requirements, and discharged on September 14, 2013. [*Id.* at pp. 14 and 19-20; Doc. 140-5, p. 3, ¶ 12]. Thus, plaintiff does not create a genuine dispute of material fact as to pretext based on differential treatment.

Plaintiff also submits evidence of alleged comments by Stauffer in February of 2012 that the sales team was "white male heavy" and that she intended to fill vacant positions with people of color. [Doc. 140-6, p. 1, ¶ 4]. To that end, Stauffer allegedly told a Cox employee in April

2012 that a prospective employee would not be considered because Cox "already had too many white professionals working for it." [Doc. 140-4, ¶ 2]. In June 2012, co-worker, Carissa Nealis, reported alleged comments by Stauffer that Cox employed "too many old, white men," and she wished she could replace the men in her department with young African-Americans. [Doc. 140-3, pp. 1-2, ¶ 5]. Nealis expressed concern to HR Manager Cruts and Business Sales Director Jenney that Stauffer was discriminating against Palzer on the basis of his race. [*Id.* ¶ 4]. However, all of the alleged comments occurred over a year prior to plaintiff's discharge. Plaintiff therefore fails to show a sufficient causal connection between the comments and the adverse employment action. *See Bolton*, 36 F.3d at 944.[19] Further, the fact that Stauffer herself is Caucasian undermines any suggestion of pretext. *See Estate of Bassatt*, 775 F.3d at 1241.[20]

For the foregoing reasons, no genuine dispute of material fact exists as to defendant's legitimate, non-discriminatory reason for terminating plaintiff's employment. Defendant is entitled to summary judgment as to plaintiff's race discrimination claim under Title VII.

### D.   *Retaliatory Discharge under the ADEA and Title VII*

Plaintiff next asserts a claim for retaliatory discharge in violation of the ADEA and Title VII. The anti-retaliation provision of Title VII states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . to discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

---

[19] For the same reason, an incident in which Stauffer ordered plaintiff off of a bus in June of 2012 does not create a genuine issue regarding pretext.

[20] In fact, it is undisputed that all the Cox personnel involved in the decision to discharge plaintiff were white.

42 U.S.C. § 2000e-3(a).  Likewise, the ADEA prohibits discrimination against employees because the employee "has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter."  29 U.S.C. § 623(d).  The *McDonnell Douglas* burden-shifting framework applies to ADEA and Title VII retaliation claims.  The first, *prima facie* stage of the framework under both the ADEA and Title VII requires plaintiff to show that (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.  *See Hinds v. Sprint/United Mgmt. Co.,* 523 F.3d 1187, 1201-02 (10th Cir. 2008) (ADEA claim); *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (Title VII).

Defendant does not dispute that plaintiff's December 21, 2012 EEOC intake questionnaire, designated unperfected charge no. 564-2013-0034, constitutes protected action, or that plaintiff's discharge was a materially adverse employment action.  However, defendant argues no causal connection exists between the protected activity—submitting the EEOC intake questionnaire—and plaintiff's discharge.

As previously stated, plaintiff's response has been stricken and, moreover, the stricken response brief includes no reference to, or argument regarding, this claim.  *See* [Doc. 135].  Thus, plaintiff effectively conceded the claim.  *See Hinsdale*, 19 F. App'x at 769.  Had plaintiff not conceded the claim, defendant would nevertheless be entitled to summary judgment because plaintiff presents no evidence from which a reasonable finder of fact could infer a causal connection between the protected activity and his discharge.

It is well-established in the Tenth Circuit that "the requisite causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Conroy v. Vilsack*, 707 F.3d 1163, 1181 (10th Cir. 2013) (quoting *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). "Where, however, 'very close temporal proximity between the protected activity and the retaliatory conduct' is lacking, 'the plaintiff must offer additional evidence to establish causation.'" *Id.* It is undisputed that plaintiff submitted the intake questionnaire on December 21, 2012, and the EEOC informed defendant that the charge was withdrawn on January 29, 2013. Defendant did not discharge plaintiff until June 10, 2013—nearly six months after plaintiff submitted the intake questionnaire and five months subsequent to the charge's withdrawal. The Tenth Circuit has consistently held that "a three-month period, standing alone, is insufficient to establish causation." *Id.* at 1181; *see also Nealis v. CoxCom, LLC*, No. 16-CV-0078-CVE-TLW, 2017 WL 1091786, at *5 (N.D. Okla. Mar. 22, 2017) (collecting cases), *aff'd*, 731 F. App'x 787 (10th Cir. 2018).[21] Thus, the nearly six months between plaintiff's protected activity and his discharge is too long a period to give rise to an inference of retaliation absent additional evidence. *See Nealis*, 731 F. App'x at 790. Plaintiff fails to submit any additional evidence to establish causation.[22] Accordingly, plaintiff fails to satisfy his burden of production as to a *prima facie* case

---

[21] The *Nealis* case was brought by Carissa Nealis, Palzer's former co-worker who reported her concerns to Cruts that plaintiff was the subject of discriminatory treatment by Stauffer. *Nealis*, 731 F. App'x at 788. The Tenth Circuit affirmed Judge Eagan's grant of summary judgment to Cox on Nealis's retaliatory discharge claim under Title VII. *Id.* at 791.

[22] To the extent plaintiff would rely on evidence purporting to demonstrate pretext, as recognized by the Tenth Circuit in *Nealis*, the court has "made clear that plaintiffs must still produce sufficient probative evidence to establish their prima facie case." *Nealis*, 731 F. App'x at 791 n.2.

of retaliation and defendant is entitled to summary judgment as to plaintiff's retaliation claims under the ADEA and Title VII.

E.     *Breach of Contract*

Finally, the court considers plaintiff's breach of contract claim. In the Petition, plaintiff asserts that defendant's progressive discipline policy constituted an enforceable contract, which defendant breached by terminating plaintiff without placing plaintiff on a PIP prior to his termination. [Doc. 2-1, ¶¶ 27-31].

Oklahoma law recognizes that an employee handbook or policy can constitute an implied contract. *Gilmore v. Enogex, Inc.*, 878 P.2d 360, 368 (Okla. 1994). An implied contract may exist when the promises contained in the handbook or policies are definite. *Id.* Thus, although the existence of an implied contract is generally a question of fact, the issue can be decided as a matter of law "if the alleged promises are nothing more than vague assurances." *Hayes v. Eateries, Inc.*, 905 P.2d 778, 783 (Okla. 1995).

Defendant presents undisputed evidence that its progressive discipline policy includes no "definite" terms restricting Cox's ability to discharge its employees. *See* [Doc. 114-2, pp. 33-37]. Rather, the policy in effect at the time explicitly provided that the corrective action policy need not be followed under certain circumstances, including "[w]hen management is of the opinion that remedial efforts are unlikely to be successful." [*Id.* at p. 34]. Additionally, the policy states that:

> In all cases, progressive discipline must follow the above outline *unless the severity of the action warrants a different step.* Because unsatisfactory job performance and unacceptable conduct have different levels of seriousness, *corrective action may occur at any level of the correction action process.*

[*Id.* at 36 (emphasis added)]. Factors to consider to determine the appropriate step of the corrective action include "[t]he quality of the employee's overall job performance" and the employee's willingness to improve performance. [*Id.* at 33-34]. These terms do not "definitively" restrict

Cox's ability to discharge employees absent compliance with the progressive discipline policy, but instead permit defendant to assess the appropriateness of progressive discipline in light of the circumstances.   Accordingly, the corrective discipline policy does not constitute an implied contract and defendant therefore cannot be subject to liability for its breach.

Nor do the General Provisions of the sales compensation plan create a genuine dispute as to the existence of an implied contract.  *See* [Doc. 114-1, pp. 138-39].  It is undisputed that the General Provisions explicitly state that "[p]articipation in this plan is not a guarantee of employment for a specified period of time, and the company reserves the right to dismiss or discharge any participant at any time for any lawful reason."  [Doc. 114-1, p. 139].  The court declines to interpret the general provisions to negate the plain language of the corrective discipline policy and limit defendant's ability to terminate plaintiff.  *See Miner v. Mid-America Door Co*., 68 P.3d 212, 222 (Okla. Civ. App. 2002).

Thus, no genuine issue of material fact exists as the existence of a contract and defendant is entitled to summary judgment as to the breach of contract claim.[23]

F.      *Claims Against Defendants Cox Oklahoma Telcom, LLC; Cox Communications, LLC; Cox Communications; and Cox Communications Kansas, LLC*

Defendants   Cox   Oklahoma   Telcom,   LLC;   Cox   Communications,   LLC;   Cox Communications; and Cox Communications Kansas, LLC have not been served and therefore do not seek summary judgment.   The docket reflects that these defendants were never served and, further, plaintiff dropped the defendants from the caption.  *See, e.g.,* [Doc. 63].   Accordingly, these defendants are entitled to summary judgment on this basis alone.  *See Zinna v. Cook*, 428 F. App'x

---

[23] As previously stated, plaintiff's stricken response includes no argument directed to this claim and therefore plaintiff has conceded the claim.  *See Hinsdale*, 19 F. App'x at 769.

838, 841 (10th Cir. 2011) (affirming grant of summary judgment to defendant "who had disappeared from the litigation by the time summary judgment proceedings were initiated").[24]

## V.    Conclusion

WHEREFORE, Defendant CoxCom, LLC's Motion for Summary Judgment [Doc. 114] is granted.

DATED this 17th day of September, 2019.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE

---

[24] Additionally, as recognized by the United State Supreme Court, a district court possesses the power to enter summary judgment *sua sponte*, "so long as the losing party was on notice that [it] had to come forward with all of [its] evidence." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326 (1986). Interpreting this standard, the Tenth Circuit has held "[t]he entry of summary judgment sua sponte is warranted only when the following conditions are met: (1) there is no dispute of material fact; (2) the losing party has had an adequate opportunity to address the issues involved, including an adequate time to develop any facts necessary to oppose summary judgment." *David v. City & Cty. of Denver*, 101 F.3d 1344, 1358-59 (10th Cir. 1996). "When a district court's *sua sponte* determination is based on issues identical to those raised by a moving party, the risk of prejudice is significantly lowered because 'the judge already is engaged in determining whether a genuine issue of material fact exists and the parties have been given an opportunity to present evidence designed either to support or refute the request for the entry of judgment.'" *Kannady v. City of Kiowa,* 590 F.3d 1161 (10th Cir. 2010) (quoting 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed.1998)). In this case, plaintiff presents no evidence of pretext, discriminatory animus, or implied contract and therefore summary judgment is appropriate. Because these issues are identical to those raised by CoxCom, LLC, as the moving party, summary judgment in favor of the nonmoving defendants is appropriate on this alternative basis.